All right, Mr. Goetz, we'll hear from you first. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Counsel. My name is Frederick Goetz. I'm appearing by appointment today on behalf of Pierre Stewart. Mr. Stewart was convicted in the United States District Court of the District of Minnesota of conspiracy to distribute heroin and possession of heroin. There's two issues that this case presents on appeal. First, was there reasonable articulable suspicion for a traffic stop that led to the seizure of some heroin and some indicia of distribution and use? Second, did the District Court, having allowed a state trooper to testify as a drug recognition evaluator and give expert testimony based upon that training, abuse its discretion when it prevented the defense from then cross-examining the trooper on the very training he received? The first issue that we're submitting is going to be determined based upon the court's review of the video evidence. I have no further argument on that unless the course has questions, and I'd like to focus my argument today then on the second issue. The Eighth Circuit has long recognized that once a district court has found that a witness may testify as an expert and a witness must be subject to the adversary's right to cross-examine the expert, including on their training and qualifications. Now, Daubert and the resultant modifications to Rule 702 changed the standards to some extent to admit expert testimony and the district court's gatekeeping function, but they had no impact on the right of the opposing party to cross-examine the expert as to the opinions and the basis, therefore, within the scope of Rule 702. Now, appellant agrees that as a general matter the district court has discretion to impose reasonable limits on cross-examination. However, in the context of expert testimony, vigorous cross-examination is one of the traditional and appropriate means of attacking this evidence, and it was unreasonable in this case to prohibit the party cross-examining the expert witness on the very training that they received that purported them, purported to make them an expert as a drug evaluation, recognition evaluator, and that's all appellant sought to do here. The district court's ruling, when appellant initially objected to trooper testifying as an expert, ultimately the court found, Judge Frank found, that the trooper could testify as an expert based upon his drug recognition evaluator training, but then I quote, the objection goes to the weight you should accord this after the full examination of the witness and all the evidence. That's what Judge Frank told the jury, but then it did not allow the defense to fully examine the witness on his training. Mr. Goetz, how did the, how would the cross-examination about this alleged misconduct at this training, how would that affect the jury's view of the reliability of his testimony? Well, I think that that's a good question, Judge Kelly, and I think that's a question that every juror should have been able to decide on their own. What's your theory? What was your, what were you trying to get at about the alleged misconduct in that training, as opposed to sort of the training itself? What were you trying to, what message were you trying to get to the jury? The message that we were trying to get to the jury, had the court allowed us to fully develop that, was that this was a program without standards that was very loose, where in effect the ends justified the means approach. And so to basically question the quality of the training he received and therefore question the quality or the weight the jury should give to his opinions as a drug recognition evaluator. In particular with respect to the industry of drug dealing that he said he found in what was essentially the vehicle connected to Mr. Stewart, the mask, the latex gloves. That's what we're... Why do you say in particular those? What is it about those particular pieces of evidence in his testimony about them that would be affected by the cross? Because it would undermine the government's case here that this was a drug dealer who was involved in a conspiracy to distribute heroin, as opposed to somebody who was a drug user. Oh, I'm sorry. My question was how... Okay, now I understand your statement. I was understanding you to say that there was something about the training and the training about drug trafficking in DISHA that was particularly vulnerable to cross-examination because of the misconduct. I don't... It's, you know, the level of the information here was not that particularized. It was over really the, in general, the quality of the training he received. And if I can give the court another example, if an expert attended, say, a one-hour online course and then allowed them to testify as, say, a forensic toxicologist, the jury would want to know that, as opposed to somebody who maybe spent four years studying and got an advanced degree. It's the quality of the training that's at issue here. And that's all the defense wanted to show. The government opened the door to this testimony when they had Trooper Utterson testify as an expert based upon his training as a drug recognition evaluator. Had the government not put on that evidence, we would not have gone into it or sought to gone into it. But having opened that door under 702 and the long-standing decisions of this court, the defense had a right to go into it. Now, I know the government respondent makes an argument on 403 grounds, and that was where the district court ultimately decided the evidence should stay out. I certainly have looked at the 403. I'm aware of the Solorio-Tofola case cited by the government. That case is really one about 403 being applied in the admission analysis, but I cannot find a case, and I haven't found a case, wherein 403 has been applied to limit a party's right to cross-examine an expert within the scope of 702. And that's all the defense sought to do here. There was also the issue of Utterson, the Trooper's one-week suspension. And to be clear, the only relevance of that was when he denied having any knowledge about the problems in the program in the first place. And it was to basically not to attack his character or anything for that, so I think Walker and Alston are indistinguishable, but it was basically to say, well, can we accept that he had no knowledge of the problems in the program when he was the only person suspended, and one could rightly assume that he would ask questions, why am I suspended? So it was only in the face of his denial of having any knowledge about the problems of the program that that became at issue. The last point I want to make is the harmless error analysis. The defense, we certainly acknowledge that this is an evidentiary ruling, and as such, it's harmless error if substantial rights of the defendant were not affected or unaffected, and the error had no or only a slight influence on the verdict. And I also understand and recognize that when the court applies that, you're going to apply that in the context of the entire evidence in this case. And as the government will no doubt point out, that includes text messages, testimony of cooperating witnesses, and the like. I submit, however, that this testimony from Trooper Utterson really set the table for the government's case. It established right from the beginning that Mr. Stewart, according to the testimony of this expert, was a drug dealer. It was important corroborative evidence of the testimony that came in later from the cooperating witness, as well as the other expert who testified, Sergeant Michael Dieter, about the text messages and the meaning of those. Sergeant Dieter, though, did not testify about anything in the car or its significance. So the only expert testimony we have on that is from Trooper Utterson. So on balance, even considering the other evidence, it was not harmless, and it did impact, in fact, took away Mr. Stewart's right to cross-examine, vigorously cross-examine, the trooper about his training when that had been put in issue. And I asked to reserve the balance of my time. Very well, thank you for your argument. Ms. Ralston, we'll hear from you. Good morning, your honors. May it please the court. Sonya Ralston for the United States. I'd like to start where opposing counsel left off on the issue of whether there was any other expert testimony about the items in the car. I'd point to the government's expert, Michael Flanagan, who was actually an expert witness and qualified as such, who testified on the second day of trial about drug trafficking, how it works, what you might find when you're investigating it, and at pages 359 to 362 of the trial transcript, you will see his testimony about dryer sheets, scales, gloves, all being indicia of drug trafficking. So it's simply not true that Mr. Utterson's testimony was all that there was to say that these things are indicia of drug trafficking. Moreover, the defendant never disputed that there were drugs in the car, that he was in the car, that the drugs were packaged for distribution. His entire defense was knowledge, and the trooper's training has nothing to do with the defendant's knowledge. The defendant's knowledge is proven exclusively by, well not exclusively, but largely and overwhelmingly, by the hundreds of text messages on his phone to multiple people over multiple months for multiple sales of distribution quantities of heroin. I feel like that's kind of the end of the case, and harmlessness is the easiest way out, but as Judge Kelly mentioned, there's also a question of relevance at all, and the district court in its ruling on this at pages 125 to 126 said essentially, this is irrelevant five times, and the district court was exactly right. The only possible valence of this evidence, that this cross-examination, is character evidence. It's to smear the officer based on other people's conduct and say that therefore he's unreliable, you shouldn't listen to anything he said. It has nothing to do with his ability. Why wouldn't it be relevant just as a general matter, not as a smear campaign against anybody in particular, but just sort of looking at the training itself that maybe was not particularly structured, and that it wasn't particularly disciplined as you might anticipate a law enforcement training to be. Why wouldn't it at least be relevant to have some general questions, even if you didn't get into the details of individual people's misconduct? Why isn't that relevant for the jury to hear about this particular officer's training? Because I think two things. One, you would have to have some reason to think that this lack of structure means that as a result of the training, and now the further training that Trooper Utterson is now an instructor in the program, means that he is incapable of identifying items that are drug related. That would have to be the relevance, and there's no reason to think that that's true. And the second would be that you would have to impute what happened by these reportedly, allegedly, there's no evidence, that some officers were engaged in unethical or illegal behavior to the program, and therefore the quality of the instruction at the program. And there's just no reason to think that the quality of the instruction was in any way suspect, that Trooper Utterson, after completing this training, was not capable of recognizing things that were drug related. I'd also point out that the district court did not officially admit Trooper Utterson as an expert under 702. The objection was raised as 401, 402, 701, 702 altogether, and the court says, well, I'll need more foundation. More foundation is laid about his experience in encountering things, and then the court says, jury, take it for the weight that you want to give it. There's no motion for him to be recognized as an expert, and then later in the court's ruling on this cross-examination, the court says, well, whether it's 701 or 702, I don't know. We'll find out. The record will show at the end, and we'll wait for the actual expert who's coming up tomorrow to see whether this matters at all. The court at that point had offered the defense to re-raise the issue, to bring the trooper back if this was going to matter. They didn't take that opportunity, which I think is an admission that this was entirely cumulative and also essentially not contested as part of this case. Unless the court has further questions, I'm happy to rest on my brief. Thank you. Seeing none, we thank you for your argument. Mr. Goetz, we'll hear from you in rebuttal. Thank you. Just to briefly respond, the argument is in essence when the government proffers a witness as an expert and goes into some depth about their training that they received. When there is a question about that training, the defense is not prohibited or is prohibited from questioning that expert about the training if it's under 403 grounds or deemed not relevant. I can't see the relevance argument here at all because the government having proffered this witness as an expert, his training is absolutely relevant and it's always relevant. And that's all the defense was trying to do here. We were not trying to cross-examine this expert as to his character. We're not trying to impugn his character. It was simply about the quality of the training and the court was not reasonable and abused its discretion when it did prohibit that. And I would look to page 125 of the transcript where I think the court specifically does consider expert opinions under 702. And while it is not exactly clear, I agree with the government on this, on whether he was allowing the testimony under 701 or 702, it certainly is mentioned and the defense objection was 702 based among other grounds. That's all I have. Thank you. Very well. Thank you for your argument. Also, Mr. Goetz, the court appreciates your willingness to accept the appointment in this case under the Criminal Justice Act. We thank both counsel. Yes. Thank you. And of course, we appreciate Ms. Raulston's public service and we thank both counsel for your arguments. The case is submitted. The court will file a decision in due course.